# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| United States of America,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>Kenton Hardy King,<br><br>　　　　　Defendant. | Case No. 2:20-cr-00344-JAD-DJA<br><br>**REPORT AND RECOMMENDATION** |

Defendant Kenton Hardy King is charged in a four count Indictment with Coercion and Enticement in violation of 18 U.S.C. 2422(b); Sexual Exploitation of Children in violation of 18 U.S.C. § 2251 (a) and (e); Attempt Sex Trafficking of Children in violation of 18 U.S.C. §§ 1591(a), 1591(b)(2), and 1954(a); and Possession of Child Pornography in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and (b)(2). (ECF No. 1). King moves for a bill of particulars as to Count 3 arguing it is ambiguous such that he cannot ascertain the Government's theory of the case. (ECF No. 73). The Government opposed the motion. (ECF No. 76). King replied. (ECF No. 81).

King also moves to suppress evidence seized from his cellphone (ECF No. 74), to suppress the contents of two internet accounts (ECF No. 75), and to suppress statements that he made to law enforcement during the investigation (ECF No. 44). The Government responded to each of these motions. (ECF No. 77, 78 and 45). King filed replies for each (ECF Nos. 82, 83 and 47).[1] The Court allowed King and the Government to supplement the motion to suppress

---

[1] For the first time in his Reply in support of his motion to suppress statements, King requests an evidentiary hearing, claiming the Government's response created factual issues necessitating an evidentiary hearing. (ECF No. 46). However, the discrepancies cited by King in his reply do not create factual issues that are necessary for the Court's determination of the motion to suppress

statements since new counsel substituted in after the original motion was filed. (ECF Nos. 70, 71 and 72).

Because the Court finds that Count 3, along with the voluminous discovery provided by the Government sufficiently places King on notice of the Government's theory to prepare for trial, the Court recommends denying the motion for bill of particulars. Because the Court finds that the internet service providers that preserved evidence in response to the Government's request neither seized evidence nor acted as government agents, it recommends denying King's motion to suppress the contents of his internet accounts. Because the Government does not intend to use King's statements in its case-in-chief and because King's statements were voluntary, the Court recommends denying King's motion to suppress his statements. And because the Court finds that the cellphone warrant was overbroad, it recommends granting King's motion to suppress the evidence obtained from his cellphone.

## PROCEDURAL AND FACTUAL BACKGROUND[2]

On June 4, 2020, a mother brought her 15-year-old daughter (Victim) to the Henderson Police Department (HPD) to report a sexual assault she discovered after reviewing text messages on the Victim's cell phone. The Victim stated that she met a man she knew as "James" (later identified as King) on the internet chat website Omegle on June 2, 2020. The Victim stated she communicated with King primarily through text messages using his cell phone with a number ending in 5675. The Victim reported that she produced child pornography at King's request and sent them to him via text messages, and that King picked her up from her home and brought her to his house where he sexually assaulted her while recording it on his phone. Among other texts, King told the Victim he was going to "sell" her and that she would need to earn $200. King demanded that the Victim send additional nude images and blackmailed her by threatening to send the images in his possession to the Victim's family and friends if she did not comply with

---

statements. As such, the Court finds this matter properly resolved without an evidentiary hearing. LR 78-1.

[2] This factual information is gleaned from the exhibits filed with the various motions, including search warrant affidavits and the audio/video of detectives' interactions with King.

his requests. In another text message King asked the Victim what year of high school she was in, to which she responded that she was a freshman.

Following the interview, the Victim consented to a search of her cell phone. HPD Detectives observed the texts she described as well as a photo of the Victim with an unknown male holding his erect penis against her mouth. In the background of the photo were a pair of white Nike athletic shoes next to the bed. Detectives extracted the Victim's phone historical location information from the day of the incident and obtained geographical coordinates for an area near Monte De Oro Avenue in Las Vegas.

The next day detectives traveled to Monte De Oro Avenue where they found several residences within the geographic coordinates from the Victim's home. A Detective approached the front door of a residence on that street and contacted a female resident at the front door. She advised she lived with several roommates, including her boyfriend and two other males. At some point her boyfriend came to the front door to speak with the detective. During this conversation King arrived at the residence and parked his car in the garage. King, who was wearing white Nike athletic shoes appearing like those in the photograph on the Victim's phone, approached a second detective who was standing in the driveway.

King, the other two residents, and the two detectives began speaking by the garage at which time King indicated that he leased the entire home and that all the paperwork related to the home was in his name. They continued to discuss who lived at the home and who had recently visited when one detective asked King if they could record a conversation and ask him more questions. While King indicated that he would like to get some sleep before his next swing shift, he agreed to speak to investigators saying, "Yeah, I guess." When asked by a detective whether he would like to speak in the garage away from neighbors for privacy King agreed.

While in the garage King and the detectives spoke about several things, including the identity of his roommates, the layout of the home and whether he had any visitors that week. King denied any recent visitors and agreed to show investigators his room, although detectives did not enter his home or room until after they obtained a search warrant. One detective then called the number provided by the victim for "James" and King's phone rang. At that point the

detectives on scene contacted other law enforcement officers who began preparing the search warrant for King's home, his cell phone and any other electronics in King's home. The search warrant did not mention or refer to King's statement.

Detectives explained that the Victim stated she visited the home the previous evening and that she gave them King's number they had just dialed. King then admitted he had a visitor the previous night and they had sex, among additional incriminating statements. King denied knowing the Victim was underage. King admitted messages between him and the Victim "might be" on his phone and was asked to share his passcode. King began to reveal the passcode to detectives but then just opened the phone for them. King also provided the passcode to that phone to Detectives, the only code he provided them during the interview. Detectives later read King his *Miranda* rights after which King provided a written statement to detectives. At the conclusion of the interview, detectives executed the search warrant and seized several electronic devices, including King's phone.

On July 20, 2020, HPD submitted a request to Omegle pursuant to 18 U.S.C. 2703(f) asking Omegle to preserve King's account. On September 4, 2020, the FBI submitted a request to both Omegle and TextNow pursuant to this same statute to preserve King's accounts. Omegle would normally preserve "chat history metadata" (IP addresses and phone records) for 120 days and chat logs indefinitely, while TextNow would preserve such records for two years. Because they are a provider of wire or electronic communications services or remote computing services, both are subject to 18 U.S.C. 2703. On September 10, 2020, the FBI obtained a warrant to search Omegle for data related to King's account and to preserve that data. On September 11, 2020, the FBI obtained a warrant for King's TextNow account.

## LEGAL STANDARDS AND ANALYSIS

**I.    The Court recommends denying King's motion for a bill of particulars.**

Rule 7(f) of the Federal Rules of Criminal Procedure states:

> The court may direct the government to file a bill of particulars. The defendant may move for a bill of particulars before or within 14 days after arraignment or at a later time if the court permits. The government may amend a bill of particulars subject to such conditions as justice requires.

"The bill of particulars has three functions: '[1] to inform the defendant of the nature of the charge against him with sufficient precision to enable him to prepare for trial, [2] to avoid or minimize the danger of surprise at the time of trial, and [3] to enable him to plead his acquittal or conviction in bar of another prosecution for the same offense when the indictment is itself too vague, and indefinite for such purposes.'" *United States v. Giese*, 597 F.2d 1170, 1180 (9th Cir. 1980) *cert. denied* 444 U.S. 979 (1979) (quotation omitted); *see also United States v. Ayers*, 924 F.2d 1468, 1483 (9th Cir. 1991) (identifying the threefold purpose of a bill of particulars). A bill of particulars is "intended to supplement the indictment by providing more detail of the facts upon which the charges are based." *United States v. Inryco, Inc.*, 642 F.2d 290, 295 (9th Cir. 1981). "A defendant seeking particularization 'has the burden of showing by brief, affidavit, or otherwise that nondisclosure would lead to prejudicial surprise or the obviation of opportunities for meaningful defense preparation." *United States v. Jones*, 2:12-cr-00400-APG-GWF, 2013 WL 5954489, at *4 (D. Nev. Nov. 6, 2013) (*citing United States v. Perry*, No. 12-10293-DJC, 2013 WL 3158078 (D. Mass. June 19, 2013)).

The Court recommends denying King's request for a bill of particulars. King argues the indictment and discovery fail to provide notice of the substantial step King took toward sex trafficking the victim and what facts support the Government's theory of the case. A brief look at the affidavit in support of the search warrant and King's texts to the Victim unravels this mystery. King took photos and pornographic videos with the victim and convinced her to send nude, provocative photos of her to King, after which he threatened to publish them to the Victim's family, friends and classmates if she did not earn $250 for him by sexually trafficking herself. This alone is notice of a substantial step King took toward sex trafficking the Victim. While the Court has not reviewed the extensive discovery provided to King, it's review of the information provided with the motions in this case provides ample notice of King's substantial steps, and there may be more in the discovery. Given this, a bill of particulars is clearly not warranted.

To the extent King seeks pretrial disclosure of the precise evidence the government intends to introduce at trial, "[a] defendant is not entitled to know all the [e]vidence the government intends to produce, but only the [t]heory of the government's case." *Giese*, 597 F.2d

at 1181 (quotation omitted). Ultimately, a bill of particulars is not intended to be used for discovery purposes. *United States v. Chan*, No. 1:07-cr-00239-LHO, 2008 WL 5233585, at *1 (E.D. Cal. Dec. 12, 2008) (*citing United States v. Shepard*, 462 F.3d 847, 860 (8th Cir. 2006)). Based on the record, the Court concludes that a bill of particulars is not necessary at this point to allow King to adequately prepare his case or to avoid prejudicial surprise and therefore recommends that his motion for a bill of particulars be denied.

**II.     The Court recommends denying King's motion to suppress the internet accounts.**

The Fourth Amendment guarantees the right to be free from "unreasonable searches and seizures." U.S. Const. amend. IV. The Fourth Amendment regulates only governmental action; it does not protect against intrusive conduct by private individuals acting in a private capacity. *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). Here, the Court finds that Omegle and TextNow's preservation of evidence in response to the Government's request under 18 U.S.C. § 2703(f)—a provision of the Stored Communications Act—did not violate the Fourth Amendment for two reasons. First, because the preservation was not a seizure. Second, because Omegle and TextNow were not acting as government agents.[3]

*A.     Omegle and TextNow's preservation of King's accounts were not seizures.*

The Stored Communications Act was designed to address access to stored wire and electronic communications and transactional records. *See* 18 U.S.C. §§ 2701 – 2713; *see Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 874 (9th Cir. 2002). Under 18 U.S.C. § 2703(f), upon the request of a governmental entity, an electronic service provider must "preserve records and other evidence in its possession pending the issuance of a court order or other process." The provider is required to retain preserved information for ninety days, and the government may request a ninety-day extension. 18 U.S.C. § 2703(f)(2). A "seizure" of property occurs when

---

[3] Because the Court does not find that Omegle and TextNow seized the accounts or operated as government agents, their preservation of the internet accounts does not implicate the Fourth Amendment. As a result, the Court does not reach the issues of whether the preservation was reasonable, whether the accounts are fruit of the poisonous tree, or whether the good faith exception applies.

there is some meaningful interference with an individual's possessory interests in their property. *United States v. Jefferson*, 566 F.3d 928, 933 (9th Cir. 2009). In analyzing what constitutes a possessory interest in the context of law enforcement's search of a defendant's rental car, the Ninth Circuit determined that "a 'possessory or ownership interest' need not be defined narrowly…a defendant who lacks an ownership interest may still have standing to challenge a search, upon a showing of 'joint control' or 'common authority' over the property searched." *United States v. Thomas*, 447 F.3d 1191, 1198 (9th Cir. 2006) (internal citations and quotations omitted).

Here, the Court does not find that by preserving King's accounts from deletion Omegle and TextNow "seized" King's property. King argues that preservation of his accounts "dispossessed him of exclusive control over the accounts and their contents." But the Government has the better argument on this point. As a preliminary matter, while the Ninth Circuit was discussing a defendant's ability to challenge a search of a rental car in *Thomas*, the Court finds the Ninth Circuit's discussion of possession instructive here. Considering the Ninth Circuit's decision that possession need not be defined narrowly, the Court finds King's insistence that possession requires the exclusion of all others to be unpersuasive. As the Government points out, King never had exclusive control of his accounts because, "[a]t all times, the data was jointly possessed by both the internet service providers and King." The Government also argues that a preservation request does not alter the account holder's ability to use their account and view, alter, or delete information. Instead, the preservation request creates a "snapshot" of the account as it existed at the time the service provider received the preservation request. The Court thus does not find that Omegle and TextNow "seized" King's data.

      **B.**      ***Omegle and TextNow were not acting as government agents.***

The Constitution constrains "governmental action by whatever instruments or in whatever modes that action may be taken." *Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374, 392 (1995) (internal quotation marks and citation omitted). Thus, a private search or seizure may implicate the Fourth Amendment where the private party acts "as an agent of the Government or with the participation or knowledge of any governmental official." *Jacobsen*, 466 U.S. at 113

(internal quotation marks and citation omitted). "A defendant challenging a search conducted by a private party bears the burden of showing the search was governmental action." *United States v. Young*, 153 F.3d 1079, 1080 (9th Cir. 1998) (per curiam). "Whether a private party should be deemed an agent or instrument of the Government for Fourth Amendment purposes necessarily turns on the degree of the Government's participation in the private party's activities, a question that can only be resolved in light of all the circumstances." *Skinner v. Ry. Lab. Execs.' Ass'n*, 489 U.S. 602, 614–15 (1989) (internal quotation marks and citations omitted).

The Court recommends denying King's motion to suppress the internet accounts. It finds that King did not meet his burden of showing that Omegle or TextNow should be deemed agents of the government by complying with the government's preservation request under 18 U.S.C. § 2703(f). Although the Government directed Omegle and TextNow to preserve the accounts, its involvement was limited only to requesting the preservation under 18 U.S.C. § 2703(f). And although Omegle and TextNow were responding to a request from the Government, they were also complying with their statutory obligations.

King has also failed to carry his burden of demonstrating that the Court should deem Omegle and TextNow agents of the government because the cases on which he relies are distinguishable and nonbinding on this Court. In *Commonwealth v. Gumkowski*, the Massachusetts Supreme Court found that Sprint acted as a government agent when it turned a defendant's cell site location information over to the government without a warrant. *Commonwealth v. Gumkowski*, 487 Mass. 314, 320-21 (Mass. 2021). However, here, the government did not ask Omegle or TextNow to turn over information, but instead requested that the electronic service providers *preserve* the information already in their possession under the Stored Communications Act pending the government obtaining a warrant. In *United States v. Hardin*, the Sixth Circuit Court of Appeals found that an apartment manager acted as an agent of the government when he entered a defendant's apartment at the government's request under the guise of repairing a leak to determine if the defendant was in the apartment. *See United States v. Hardin*, 539 F.3d 404, 417-20 (6th Cir. 2008). But Omegle and TextNow's actions of preserving information already in their possession as required under statute is meaningfully distinguishable

from the private apartment manager entering a person's home to determine specific information at the government's behest. Because the Court finds that Omegle and TextNow neither seized information nor acted as government agents, the Court recommends denying King's motion to suppress the contents of these internet accounts.

**III.     The Court recommends denying King's motion to suppress statements.**

A violation of *Miranda* bars the Government from introducing a defendant's otherwise voluntary statement in its case-in-chief but does not preclude the Government from using defendant's statement for impeachment purposes if he testifies. *Harris v. New York*, 401 U.S. 222, 225-26 (1971); *Oregon v. Elstad*, 470 U.S. 298, 318 (1985); *United States v. Patane*, 542 U.S. 630, 639 (2004). An involuntary statement obtained from defendant in violation of the Fifth Amendment, however, may not be admitted for any purpose. *Pollard v. Galaza*, 290 F.3d 1030, 1033 (9th Cir. 2002) (citing *Michigan v. Harvey*, 494 U.S. 344, 351 (1990) and *Henry v. Kernan*, 197 F.3d 1021, 1029 (9th Cir. 1999)).

In evaluating voluntariness, the test is whether "the government obtained the statement by physical or psychological coercion or by improper inducement," *United States v. Male Juvenile*, 280 F.3d 1008, 1022 (9th Cir. 2002) (citation omitted), such that the "defendant's will was overborne" by the surrounding circumstances. *United States v. Preston*, 751 F.3d 1008, 1016 (9th Cir. 2014) (en banc) (quoting *Dickerson v. United States*, 530 U.S. 428, 434 (2000)). This is an "inquiry that 'takes into consideration the totality of all the surrounding circumstances—*both* the characteristics of the accused *and* the details of the interrogation'" *Preston*, 751 F.3d at 1016 (quoting *Dickerson*, 530 U.S. at 434) (emphasis in original). The government bears the burden of showing a confession is voluntary, *J.D.B. v. N. Carolina*, 564 U.S. 261, 269-70 (2011), and must do so by a preponderance of the evidence. *Lego v. Twomey*, 404 U.S. 477, 489 (1972).

Coercive police activity is a necessary predicate to a finding that a confession is not voluntary. *Brown v. Horell*, 644 F.3d 969, 979 (9th Cir. 2011); *see also Colorado v. Connelly*, 479 U.S. 157, 164-65 (1986) (providing examples of police overreaching) "Coercive police activity can be the result of either physical intimidation or psychological pressure." *Brown*, 644 F.3d at 979 (internal citation omitted). "The factors to be considered include the degree of police

coercion; the length, location and continuity of the interrogation; and the defendant's maturity, education, physical condition, mental health, and age." *Id.* (citing *Withrow v. Williams*, 507 U.S. 680, 693–94 (1993); *Yarborough v. Alvarado*, 541 U.S. 652, 668 (2004) ). "Cases finding coercive police conduct have been manifestly outrageous." *United States v. Burleson*, No. 2:16-cr-00046-PAL-GMN, 2017 WL 8941310, at *4 (D. Nev. Jan. 11, 2017), *report and recommendation adopted*, No. 2:16-CR-46-GMN-PAL, 2017 WL 484084 (D. Nev. Feb. 6, 2017) (compiling cases).[4]

The Ninth Circuit has noted that a defendant's mental state alone does not make a statement involuntary. *Pollard v. Galaza*, 290 F.3d 1030, 1034 (9th Cir. 2002). "Rather, coercive conduct by police must have caused him to make the statements." *Id.* (internal quotations and citations omitted). In the absence of coercion, mental and emotional instability do not render inadmissible an intelligible and alert individual's voluntary statements. *Preston*, 751 F.3d at 1019 (quoting *Connelly*, 479 U.S. at 164) (discussing *Connelly*'s affirmance that although the accused's state of mind is a factor in assessing the voluntariness of his responses, it is not in and of itself determinative).

The Court recommends denying King's motion to suppress his statements. As a preliminary matter, the Government has explained that it will not seek to use King's statements in its case-in-chief. The Court agrees with the Government that this moots King's arguments

---

[4] Citing *e.g.*, *Mincey v. Arizona*, 437 U.S. 385, 398–99 (1978) (finding statement obtained from a defendant who was in the hospital, in near coma condition, and in great pain, while fastened to tubes, needles, and a breathing apparatus, could not have been voluntary); *Haynes v. State of Wash.*, 373 U.S. 503, 511–12 (1963) (invalidating confession where suspect was held for over five days and never advised of his rights); *Ashcraft v. Tennessee*, 322 U.S. 143, 149–54 (1944) (invalidating confession because police questioned suspect for thirty-six hours straight); *Henry v. Kernan*, 197 F.3d 1021, 1028 (9th Cir. 1999) (finding confession was involuntary because detectives admittedly continued the interrogation after the suspect clearly invoked his *Miranda* rights); *California Attorneys for Criminal Justice v. Butts*, 195 F.3d 1039, 1046 (9th Cir. 1999) (finding coercive interrogation because the police disregarded the suspect's *Miranda* rights); *United States v. Tingle*, 658 F.2d 1332, 1335–36 (9th Cir. 1981) (finding confession involuntary when officer recited a litany of maximum penalties for the suspect's alleged crimes, expressly stated that the suspect would not see her child "for a while, and warned the suspect that if she failed to cooperate he would inform the prosecutor that she was "stubborn or hard-headed").

regarding whether he was in custody when he gave his statements, that he did not waive his *Miranda* rights, and that he was improperly subjected to a two-step interrogation. The Court also finds that the Government can properly use King's statements for impeachment purposes because they were voluntary.

The Court does not find that law enforcement obtained King's statements by physical or psychological coercion or improper inducement or that King's will was overborne by the surrounding circumstances. King argues that the police acted in a coercive manner by isolating King from his roommates, questioning him for ninety minutes, threatening him with arrest if he was not honest, and standing around him in a triangle-like formation a few feet away. King adds that he was particularly susceptible to intimidation from this conduct because of internal factors like his age—twenty-five—that he had just arrived home and hoped to get some sleep before working the graveyard shift, and that it would be his first night back at work since losing his job during the pandemic. However, the Court does not find this conduct to rise to the level of outrageousness that has caused courts to find coercion in other circumstances.

The Court also finds that the Government has met its burden of demonstrating that King's statements were voluntary. The Government points out that, despite informing officers that he was hoping to sleep before work, King ultimately agreed to speak with officers and to do so in the privacy of the garage. King did not request his roommates' presence to speak with officers. King also spoke in a calm manner and officers stood feet away from him. While officers warned King to be honest with them or else face arrest—a threatening statement—considering the totality of the circumstances, the Court does not find this to rise to the level of coercion. As the Government points out, King continued to speak in a calm manner and maintained a story of events that the Government asserts was untrue even in light of the officers' warning, suggesting that his will was not overborne. Because the Government does not intend to use King's statements in its case-in-chief and because the Government has met its burden of showing that King's statements were voluntary for the purposes of impeachment, the Court recommends that King's motion to suppress his statements be denied.

IV. **The Court recommends granting King's motion to suppress cellphone evidence.**

   A.   *The Court cannot determine that the warrant incorporated the affidavit.*

Before addressing King's contentions on the merits, the Court must conclude whether the warrants incorporated the affidavits supporting them. *See United States v. Towne*, 997 F.2d 537, 544 (9th Cir. 1993) ("[o]nly after the content of 'the search warrant' is established…can the warrant be tested to see if it meets [the Fourth Amendment's] requirements."). If it was incorporated, the Court evaluates the affidavit and the warrant as a whole, allowing the affidavit to "cure" any defects in the naked warrant. *U.S. v. SDI Future Health, Inc.*, 568 F.3d 684, 699 (9th Cir. 2009) (citing *Towne*, 99 F.2d at 544). For a document to be considered part of a search warrant, it must be (1) incorporated by reference to the search warrant and (2) accompany the search warrant both when it is authorized by the judge and when the search warrant is executed. *Towne*, 99 F.2d at 547-48; *see also SDI*, 568 F.3d at 699. The Ninth Circuit noted that it remains "'rigid' in [its] insistence on both of these requirements" to "assure that the affidavit actually limits 'the discretion of the officers executing the warrant.'" *Towne*, 997 F.2d at 548.

Additionally, the Ninth Circuit has found that absent any evidence that the affidavit accompanies or was attached to the warrant at the time the warrant was executed, the "fact that the warrant states that the affidavit is both attached and incorporated by reference is insufficient to permit us to conclude that the affidavit accompanied the warrant at the time of the search." *United States v. Hotal*, 143 F.3d 1223, 1225 (9th Cir. 1998) (citing *United States v. Van Damme*, 48 F.3d 461 (9th Cir. 1995)). In *United States v. Turner*, the Honorable District Judge Kent. J. Dawson found *Hotal* and *Van Damme* distinguishable when analyzing a report and recommendation regarding a motion to suppress a warrant. *See United States v. Turner*, No. 2:21-cr-00013-KJD-BNW, 2022 WL 195083, at *5 (D. Nev. Jan. 21, 2022). There, Judge Dawson noted the warrant in *Hotal* did not specify the criminal activity suspected or any type of evidence sought and the warrant in *Van Damme* said "'SEE ATTACHMENT #1'…[b]ut nothing was attached." *Turner*, 2022 WL 195083, at *5. But because the warrant at issue in *Turner* indicated the specific crimes alleged and the items to be searched and because the government asserted that the affidavits were attached in objecting to the report and recommendation, Judge

1  Dawson found that he had sufficient grounds to find that the warrants incorporated and attached
2  the affidavits. *Id.*

3  Here, although the warrant incorporated the affidavit by reference, the Court cannot find
4  that the affidavit accompanied the warrant at the time officers searched King's phone. The
5  warrant incorporated the affidavit by reference because it states "[i]n support of your Affiant's
6  assertion to constitute existence of probable cause, as well as[] a request for a nighttime search at
7  any hour of the day or night [sic], the following facts are offered in **Exhibit 3** attached hereto and
8  incorporated herein by this reference." (ECF No. 45-1 at 2) (emphasis in original). Thus, the first
9  prong is met.

10  However, the second prong—whether the affidavit accompanied the warrant when
11  executed—is not as clear. The Government asserts that officers had the warrant to reference
12  when conducting the cellphone search. As proof of this, the Government points to an officer
13  narrative. (ECF No. 75-7). However, the narrative does not demonstrate whether officers
14  referenced the affidavit when executing the warrant. Unlike Judge Dawson's analysis in *Turner*,
15  the Court does not find the Government's statement here that the affidavit was attached and that
16  the officers relied on it in conducting the search sufficient to find that the affidavit actually
17  limited the officers' discretion. Indeed, although the warrant describes the crimes like the warrant
18  in *Turner*, it did not provide any dates with which officers could tailor their searches.
19  Additionally, the Government provides little analysis on the issue of whether the affidavit
20  accompanied the warrant and provides no discussion about why this was the case, other than
21  pointing to the narrative. As a result, the Court finds that the affidavit was not incorporated or
22  attached to the warrant such that it limited the officers' discretion and "saves" the warrant.

23      **B.**    ***The warrant is overbroad.***

24  "A warrant is overbroad if it fails to establish 'probable cause to seize the particular
25  thing[s] named in the warrant,' and courts will invalidate warrants 'authorizing a search which
26  exceeded the scope of the probable cause shown in the affidavit.'" *United States v. Martinez*, No.
27  19-cr-00662-JSW-1, 2020 WL 3050767, at *5 (N.D. Cal. June 8, 2020) (quoting *In re Grand Jury*
28

1  *Subpoenas Dated Dec. 10, 1987*, 926 F.2d 847, 857 (9th Cir. 1991)).  Courts consider three factors in analyzing whether a warrant is overbroad:

> (1) whether probable cause existed to seize all items of a category described in the warrant; (2) whether the warrant set forth objective standards by which executing officers could differentiate items subject to seizure from those which were not; and (3) whether the government could have described the items more particularly in light of the information available.

*United States v. Flores*, 802 F.3d 1028, 1044 (9th Cir. 2015).

Under the first factor, probable cause exists when "under the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Luong*, 470 F.3d 898, 902 (9th Cir. 2006) (internal quotations omitted). Under the second, the Ninth Circuit considers an affidavit to be part of a warrant, and therefore potentially curative of any defects if the warrant (1) expressly incorporated the affidavit by reference; and (2) the affidavit either is attached physically to the warrant or at least accompanies the warrant while agents execute the search. *SDI Future Health, Inc.*, 568 F.3d at 699. And under the third, specific, technical language is not expected in warrants, which are often drafted by nonlawyers in the midst and haste of a criminal investigation. *See Illinois v. Gates*, 462 U.S. 213, 235 (1983); *see Turner*, 2022 WL 195083, at *6 (finding the *Illinois v. Gates* analysis—which the Supreme Court had applied to the *Spinelli v. U.S.*, 393 U.S. 410 (1969) two-factor test—to be applicable to and persuasive in determining the third factor of the overbreadth analysis).

1. Probable cause.

The warrant lacked probable cause to search all items of the categories sought. The Government argues that probable cause existed to seize all items of the categories described in the warrant because the warrant "only sought to search King's property (and specifically cell phones) and only for evidence related to the specified crimes." But the Government's argument misses the mark. The warrant permitted officers to search "[a]ny and all cell phones on the premises…" and the "iPhone located in Kenton King's pocket." (ECF No. 45-1 at 5). The warrant further allowed officers to "forensically search the aforementioned storage device(s) or media for all

digital data files, records, documents, and materials or otherwise [sic] evidence described in the warrant." (*Id.* at 7). But the warrant—even if the affidavit was incorporated and attached—did not establish probable cause to search the *entirety* of King's phone and all phones on the premises. Instead, it established probable cause to search specific portions of the phone King used to communicate with the victim on the specific days he communicated with her. But the warrant seeks to seize far more items than that for which the warrant establishes probable cause. The Court thus finds that the first factor weighs in favor of finding that the warrant seeking the contents of King's cellphones was overbroad.

2. <u>Objective standards.</u>

The Court finds that the warrant did not set forth objective standards by which executing officers could differentiate items subject to seizure from those which were not. The Government asserts that, because the warrant specified the crimes and suspect and because the Government did not use the seized data for any broader purpose, the second factor weighs in favor of finding that the warrant was not overbroad. But the warrant did not specify the crimes in a way that would allow executing officers to differentiate between items subject to seizure and those that were not. While the crimes themselves were specific, the timeframe in which King committed them was not included on the face of the warrant. And the Court has already found that the affidavit does not cure any defects in the warrant. As a result, the Court finds that the second factor weighs in favor of finding the warrant to be overbroad.

3. <u>Particularity.</u>

The Court finds that the Government could have described the items more particularly in light of the information available. The Government avers that the warrant was sufficiently particular because it only authorized officers to search for and seize evidence of specific crimes. The Government asserts that the lack of specific dates in the warrant does not render it non-particular because many categories of information on cellphones may not have associated dates. To the contrary, the Government asserts that the inclusion of date ranges in the warrant would have unreasonably limited officers from finding items related to the specific crimes that King may have deleted or altered.

The Court does not find the Government's argument that date frames and more particular standards would have impeded the search of King's phone to be persuasive or congruent with the law on this issue. While specific, technical language is not required in warrants, the warrant at issue here lacks any particular, specific language. This language was available because officers already knew from their interview of the Victim when King committed the alleged crimes and where information related to those crimes could be found on King's phones. But the warrant gave officers permission to search the entirety of King's phones without reference to the dates King committed the crimes, the method by which he committed those crimes, or the sources of data that might contain evidence of those crimes. And the affidavit does not correct these deficiencies. The Court thus finds that the third factor weighs in favor of finding the warrant to be overbroad.

### C. The good faith exception does not apply.

"Evidence seized pursuant to a facially valid search warrant that later is held to be invalid may nevertheless be admissible if officers conducting the search acted in good faith and in reasonable reliance on the warrant." *United States v. Kow*, 58 F.3d 423, 428 (9th Cir. 1995) (citing *United States v. Leon*, 468 U.S. 897, 926 (1984)). The good faith exception does not apply, however,

> (1) where the affiant recklessly or knowingly placed false information in the affidavit that misled the issuing judge; (2) where the judge wholly abandon[s] his [or her] judicial role; (3) where the affidavit is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) where the warrant is so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid.

*United States v. Underwood*, 725 F.3d 1076, 1085 (9th Cir. 2013) (internal quotations omitted).

"The government bears the burden of proving that reliance upon the warrant was objectively reasonable." *Kow*, 58 F.3d at 428. Regarding the fourth instance when the good faith exception does not apply, in the Ninth Circuit, "[a]s a rule," if a warrant is facially overbroad, "an objectively reasonable belief in its validity will be impossible." *Towne*, 997 F.2d at 549. This is

so because "officers attempting to execute a warrant so facially overbroad that it precludes reasonable reliance will recognize, even after the warrant leaves the hands of the magistrate, that it fails to offer guidance." *Id*. The Ninth Circuit has further explained that "[r]equiring that an officer know when a warrant is facially overbroad to this degree presents little burden." *Ortiz v. Van Auken*, 887 F.2d 1366, 1370 (9th Cir. 1989). Accordingly, the Ninth Circuit is "vigilant in scrutinizing officers' good faith reliance on such illegally overbroad warrants." *Id.*; *see also United States v. Stubbs*, 873 F.2d 210 (9th Cir. 1989) (good faith exception inapplicable to overbroad warrant that lacked probable cause to seize all documents allowed to be seized, did not provide objective standards by which executing officers could determine what could be seized, and should have been more specific).

Here, the Government has not met its burden of demonstrating that the officers' reliance on the warrant was objectively reasonable. The Government asserts that, because the warrant limited the search of the cellphone to evidence of the specific offenses and because the affidavit outlined the timeline of King's conduct, the warrant was not so facially deficient that officers could not have relied on it. But although the warrant listed the alleged crimes, it did not provide any other guidance on its face on which the officers executing it could rely. It provided no time frames and did not describe the portions of the cellphone for officers to search. And again, the Government has not demonstrated that the executing officers had the affidavit to guide their search. The Court thus finds that the good faith exception does not apply because the warrant was facially overbroad.

### D. *The doctrine of severance does not apply.*

The doctrine of severance allows the court to "strike from a warrant those portions that are invalid and preserve those portions that satisfy the Fourth Amendment. Only those articles seized pursuant to the invalid portions need be suppressed." *Flores*, 802 F.3d at 1045 (quoting *United States v. Gomez-Soto*, 723 F.2d 649, 654 (9th Cir. 1984)). Severance therefore requires "identifiable portions of the warrant [to] be sufficiently specific and particular[.]" *United States v. Spilotro*, 800 F.2d 959, 967 (9th Cir. 1986). "Total suppression, on the other hand, is appropriate when a warrant is wholly lacking in particularity." *Id*. "In general, we do not allow

severance or partial suppression 'when the valid portion of the warrant is a relatively insignificant part of an otherwise invalid search.'" *SDI Future Health, Inc.*, 568 F.3d at 707. However, even when the valid portion of the warrant is smaller than the invalid portion, severance may be appropriate if it was "a principal portion" of the evidence the government sought. *Id.*

*United States v. Lofstead* stands for the proposition that severing invalid portions of information seized under a search warrant from that which is valid using an after-the-fact temporal limitation is an unrecognized interpretation of the severance doctrine. *United States v. Lofstead*, 574 F.Supp.3d 831, 846-48 (D. Nev. 2021). There, the defendant moved to suppress text message evidence the government obtained from his cellphone under a warrant that did not include a temporal limit. *Id.* at 835-38. The defendant was arrested after texting and arranging commercial sex with an FBI agent who the defendant believed was a sixteen-year-old girl. *Id.* After agents arrested the defendant, they sought a search warrant for his phone which did not include a temporal limit on the materials to be searched. *Id.* The Honorable Chief Judge Miranda M. Du found that the warrant was overbroad and rejected the government's argument that the court should impose a "post facto temporal limitation on the warrant suppressing all material prior to the charged incident." *Id.* at 847. Judge Du reasoned,

> to the Court's knowledge, this interpretation of the severance doctrine has not been recognized. Moreover, severance to allow for the text communications on October 7 (the date of the incident and arrest) as the government suggests…would require an ex post facto remedy that serves no deterrence purpose given the Warrant's expanse and lack of sufficient particularity…Total suppression in this case would also serve the purposes of the exclusionary rule in a way that severance would not…The circumstances of this case do not indicate the overreach was due to bad actions by a rogue officer, but rather a failure at each step to use restraint in accordance with the protections of the Fourth Amendment when attempting to discover and prosecute crimes on a broader basis.

*Id.* at 847.

Because the good faith exception does not apply, the Court must determine whether the information supported by probable cause is severable from that which must be suppressed. The Government asserts that "[i]nvestigators neither located nor seized data unrelated to the specified

offenses from King's cell phones," and "the government does not seek to introduce any evidence at trial that does not relate to the charged offenses that occurred between June 2 and June 4 of 2020…" (ECF No. 78 at 4, 12).  While neither side describes the evidence the Government obtained from King's cell phones, the Government explains that the evidence included "photographs, videos, pornography, writings, and any records[,] documents[,] or other material related to King's sexual crimes against VICTIM-1." (*Id.* at 6).  The Court thus concludes that, although the cellphone search constituted only a small portion of the warrant, the data from King's phones are the "principal portion" of evidence the government sought to obtain and therefore, the Court may consider severance.

However, the Court finds Judge Du's analysis in *Lofstead* to be on-point and instructive here.  Not only is *Lofstead* factually similar to the case at hand, but the Government has made similar arguments here—that the Court can constrain the warrant after-the-fact to the date of the incident and arrest—as it did in *Lofstead*.  And for the same reasons Judge Du found that argument unpersuasive in *Lofstead*, the Court finds it unpersuasive here.  As Judge Du reasoned in *Lofstead*, here the Court finds that suppression would serve the purposes of the exclusionary rule, which purposes are particularly critical here where the cellphone warrant was wholly lacking in particularity.  As in *Lofstead*, here, when law enforcement has information that would enable more targeted searches, severance should not be used as a post facto remedy to rewrite overbroad warrants.  The Court thus recommends granting King's motion to suppress the cellphone information.

## CONCLUSION AND RECOMMENDATION

IT IS THEREFORE RECOMMENDED that King's motion to suppress statements (ECF No. 44) be DENIED.  IT IS FURTHER RECOMMENDED that King's motion for bill of particulars (ECF No. 73) be DENIED.  IT IS FURTHER RECOMMENDED that King's motion to suppress cellphone evidence (ECF No. 74) be GRANTED.  IT IS FURTHER RECOMMENDED that King's motion to suppress the contents of his internet accounts (ECF No. 75) be DENIED.

**NOTICE**

This report and recommendation is submitted to the United States District Judge assigned to this case under 28 U.S.C. § 636(b)(1). A party who objects to this report and recommendation may file a written objection supported by points and authorities within fourteen days of being served with this report and recommendation. Local Rule IB 3-2(a). Failure to file a timely objection may waive the right to appeal the district court's order. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

DATED: July 17, 2023

DANIEL J. ALBREGTS
UNITED STATES MAGISTRATE JUDGE