# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

United States of America,

    Plaintiff

v.

Kenton Hardy King,

    Defendant

Case No.: 2:20-cr-00344-JAD-DJA

**Order Overruling Objections, Adopting Report and Recommendation in Part, and Referring Cellphone-Search Suppression Issue Back to Magistrate Judge**

[ECF No. 44, 73, 74, 75, 88, 93, 94]

Defendant Kenton King is charged with sexual exploitation of children, attempted sex trafficking of children, possession of child pornography, and coercion and enticement.[1]  He moves to suppress his pre-*Miranda* statements to officers as involuntary and a product of coercion; the contents of his internet accounts used to communicate with a 15-year-old girl, theorizing that the companies' preservation efforts amounted to state action and an unreasonable seizure; and evidence found on his cell phone as gleaned from an overbroad search warrant. King also moves for a bill of particulars to clarify the substantial-step element required for his attempted-sex-trafficking charge.  The government opposes all three suppression efforts, arguing that King's statements were voluntary because officers did not engage in coercive activity, the preservation of King's internet-account data is not state action, and the search warrant incorporated an affidavit that cured any potential deficiencies.

The magistrate judge recommends that I deny suppression of King's pre-*Miranda* statements and the contents of his internet accounts, as well as a bill of particulars, but he recommends that I suppress the evidence found on King's cell phone because the government

---

[1] ECF No. 1.

failed to establish that the affidavit was incorporated into the warrant.  On de novo review, I

adopt the magistrate judge's recommendation to deny King's motion to suppress his pre-

*Miranda* statements and the contents of his internet accounts, as well as his request for a bill of

particulars.  But because the government has submitted new evidence in its objection to the

magistrate judge's recommendation, I refer the motion to suppress evidence from King's cell

phone back to the magistrate judge for reconsideration in light of the new evidence.

**Factual Background**

On June 2, 2022, Kenton King met H.S., a 15-year-old girl, on a chat website called

Omegle.[2]  They exchanged phone numbers and began messaging with a text-message service

called TextNow.[3]  Their messaging was flirtatious; it escalated quickly to H.S. sending nude

photos of herself to King.[4]  They arranged to meet in person that same day.[5]

King picked up H.S. from her home and drove her to his house where they engaged in

sex.[6]  King recorded and photographed some of the encounter on his cell phone.[7]  He dropped

H.S. back home, and they continued texting the following day.[8]  He used the nude photos and

video of H.S. to threaten her,[9] insisting that she earn money for him by trafficking herself or he

would release the photos to her family and friends.[10]

---

[2] ECF No. 44 at 2.

[3] ECF No. 75 at 2.

[4] ECF No. 44 at 2.

[5] *Id*. at 2.

[6] *Id*.; ECF No. 70-2 at 41.

[7] ECF No. 44 at

[8] ECF No. 45 at 2–3.

[9] ECF No. 44 at 2.

[10] ECF No. 45 at 2.

On June 4, H.S. and her mother went to the Henderson Police Station to report a sexual assault.[11]  H.S. consented to a search of her cell phone, and officers found the text messages, photos, and video from the days prior.[12]  They obtained the phone number King used to message H.S.[13] and extracted location data from the day of the incident.[14]

The next day, officers went to King's home and briefly spoke with his roommates in the doorway.[15]  King soon arrived home and pulled into the garage.[16]  A conversation between King, his roommates, and the officers followed on the driveway, and eventually officers asked if King wished to speak privately in his garage.[17]  King agreed, and three officers questioned him about the incident.[18]  One officer called the number that H.S. provided in her interview, and King's cell phone rang.[19]  After confirming that King's cell phone matched the number messaging with H.S., officers prepared a search warrant for King's home and cell phone.[20]

**Procedural Background**

King now moves to suppress the statements he made to officers in the garage, arguing that they were a product of custodial interrogation and obtained in violation of *Miranda v. Arizona* and the Fifth Amendment.[21]  The government counters that King's statements were

---

[11] ECF No. 44 at 2.

[12] *Id.*

[13] ECF No. 78 at 2.

[14] ECF No. 45 at 3.

[15] ECF No. 70-2 at 1–12.

[16] ECF No. 45 at 3; ECF No. 70-2 at 1–12.

[17] ECF No. 45 at 4; ECF No. 70-2 at 16.

[18] ECF No. 44 at 3.

[19] ECF No. 70-2 at 34–35.

[20] ECF No. 45 at 4–5.

[21] ECF No. 44.

knowing and voluntary because the conversation with officers was calmly conducted and there was no violence or coercive activity.[22]   The magistrate judge recommends denying King's motion to suppress the statements based on the finding that King's statements were voluntary and not a product of coercion.[23]   King objects, arguing that he was exposed to psychological coercion when officers cornered and isolated him in the garage and threatened him with arrest.[24]

King also moves to suppress the contents of his Omegle and TextNow accounts.[25]   He asserts that Omegle and TextNow acted as government agents when they preserved his accounts, and this constitutes an unreasonable seizure under the Fourth Amendment.[26]   The government responds that mere preservation does not amount to state action.[27]   The magistrate judge recommends that I deny the motion because Omegle and TextNow's preservation is not state action.[28]   King objects that Omegle and TextNow's statutory obligation to comply with law-enforcement orders turns them into government agents.[29]

The last category of evidence King moves to suppress is the contents of his cell phone, arguing that the search warrant was unconstitutionally overbroad.[30]   The government responds that the search warrant was sufficiently particular but, even if it wasn't, the warrant incorporates

---

[22] ECF No. 45.

[23] ECF No. 88 at 11.

[24] ECF No. 93 at 6–7.

[25] ECF No. 75.

[26] *Id*.

[27] ECF No. 77.

[28] ECF No. 44.

[29] ECF No. 93.

[30] ECF No. 74.

an affidavit that makes up for any deficiencies.[31]  The magistrate judge found that the government failed to provide enough facts to establish incorporation, so he recommends that I grant King's motion in that regard only.[32]  The government objects, attaching an affidavit it hopes will establish incorporation.[33]  King responds that the court should disregard this late-produced evidence and adopt the recommendation for suppression.[34]

Finally, King moves for a bill of particulars to clarify the substantial-step element in his attempted-sex-trafficking-of-children charge.[35]  The magistrate judge recommends that I deny that motion because the facts in the affidavit supporting the search warrant clearly detail King's substantial step.[36]  King does not object to this recommendation.[37]

## Analysis

A district court reviews objections to a magistrate judge's proposed findings and recommendations *de novo*.[38]  "The district judge may accept, reject, or modify the recommendation, receive further evidence, or resubmit the matter to the magistrate judge with instructions."[39]  The standard of review applied to the unobjected-to portions of the report and

---

[31] ECF No. 78.

[32] ECF No. 88.

[33] ECF No. 94.

[34] ECF No. 95.

[35] ECF No. 73.

[36] ECF No. 88 at 5.

[37] ECF No. 93 at 1 n.2.

[38] Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1)(B); Local Rule IB 3-2(b) (requiring a district judge to review de novo only the portions of a report and recommendation addressing a case-dispositive issue that a party objects to).

[39] *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121–22 (9th Cir. 2003).

1  recommendation is left to the district judge's discretion.[40]  Local Rule IB 3-2(b) requires *de novo*

2  consideration of specific objections only.[41]

3  **A.  King's statements are voluntary and may be used for impeachment purposes.**

4  King moves to suppress the statements he made to officers while they spoke inside his

5  garage.[42]  He argues that they were obtained in violation of *Miranda v. Arizona* and the Fifth

6  Amendment.[43]  *Miranda* warnings are a "practical reinforcement" of a defendant's Fifth

7  Amendment right.[44]  "The prosecution may not use statements . . . stemming from custodial

8  interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to

9  secure the privilege against self-incrimination."[45]  A defendant's statements must also be made

10 voluntarily; involuntary statements are not admissible for any purpose.[46]  A statement is

11 involuntary when a defendant is subject to coercion "by physical intimidation or psychological

12 pressure."[47]  To determine whether officers created a coercive environment, the court must ask

13 "whether the defendant's will was overborne at the time he confessed."[48]

14 King argues that he was subject to custodial interrogation and should have received a

15 *Miranda* warning before officers questioned him in his garage.[49]  He contends that the

16

17 [40] *Id.*

[41] *See* Nevada L.R. IB 3-2(b) (requiring *de novo* consideration of specific objections only).

18 [42] ECF No. 44.

19 [43] *Id.*

20 [44] *Michigan v. Tucker*, 417 U.S. 433, 444 (1974).

[45] *Miranda v. Arizona*, 384 U.S. 436, 446 (1966).

21 [46] *Pollard v. Galaza*, 290 F.3d 1030, 1033 (9th Cir. 2002) (citing *Michigan v. Harvey*, 494 U.S. 344, 351 (1990)).

22 [47] *United States v. Tingle*, 658 F.2d 1332, 1335 (9th Cir. 1981).

23 [48] *Haynes v. State of Wash.*, 373 U.S. 503, 513 (1963).

[49] ECF No. 44 at 15–16.

conversation was an interrogation because officers obtained information from H.S. that made King a suspect, so officers knew their questioning would elicit an incriminating response.[50] He also asserts that he was essentially restrained and in custody because officers outnumbered him three to one, surrounded him on all sides in his small garage, isolated him, and provided no "police-free rooms or spaces" that he could retreat to.[51] In a supplement, King adds that the conversation became confrontational, he did not believe he was free to leave the garage, and he was pressured into making inculpatory statements.[52]

### 1.    *The government intends to use King's statements to officers for impeachment purposes only.*

The government does not respond to King's theory of custodial interrogation. Instead, it maintains that it will not introduce King's statements at trial as substantive evidence, although it may use them for impeachment purposes if he testifies.[53] It argues that a pre-*Miranda* statement used to impeach need only be made voluntarily. And because officers calmly conducted the interview and did not unholster their guns, resort to violence, or engage in any coercive activity, King's statements were voluntary.[54]

The magistrate judge recommends that I deny King's motion to suppress his statements because the officers' acts of isolating King after he arrived home from work, surrounding him in a triangle formation, and questioning him for 90 minutes in the garage do not constitute

---

[50] *Id*. at 9.

[51] *Id*. at 10–13.

[52] ECF No. 70 at 5–6, 9.

[53] ECF No. 45 at 6.

[54] *Id*. at 8.

coercion.[55]  While the magistrate judge acknowledged that officers threatened to arrest King if he was not truthful, he ultimately considered the totality of the circumstances and concluded that King's statements were voluntary because King agreed to speak with the officers alone in his garage, the conversation was calm and composed, and King never requested the presence of his roommates.[56]

King objects that, although he initially agreed to speak with officers alone in his garage, the conversation became coercive once officers surrounded him and backed him up against his car.[57]  He argues that he wasn't required to request his roommates' presence and that isolating a defendant leaves him feeling compelled to make incriminating statements.[58]  King contends that, after he was threatened with arrest, he answered all questions truthfully, "suggest[ing] his will *was* overborn by the threat."[59]

### 2.   *Unmirandized, voluntary statements may be used for impeachment purposes.*

The government's intention to admit King's statements as impeachment evidence instead of substantive evidence narrows my suppression analysis.  It is undisputed that King was not Mirandized prior to his conversation with officers.  But voluntary statements made in violation of *Miranda* may still be admitted for impeachment purposes, and that's the only use that the

---

[55] ECF No. 88 at 11.

[56] *Id.*

[57] ECF No. 93 at 6–7.

[58] *Id.* at 6.

[59] *Id.* at 7.

government now intends for these statements.[60]  So the inquiry now focuses on whether King's

statements were voluntary such that they may be used for impeachment purposes.[61]

### 3.    King's statements were voluntary.

Courts consider several factors when determining whether a statement is voluntary,

including "the declarant's state of mind, the physical environment in which the statement was

given, and the manner in which the declarant was questioned."[62]  Courts have also considered

"[t]he tone of voice used and the promises or representations made by the questioner."[63]  A

declarant's statements may be involuntary if they are "incoherent, confused, disjointed" and the

declarant is "shaken, frightened, and crying."[64]  The Ninth Circuit has found statements to be

involuntary when made by a declarant questioned in the hospital and inserted with feeding tubes,

breathing tubes, and a catheter,[65] while statements were voluntary when made by an unrestrained

declarant previously asleep for three hours in a police-interrogation room before plain-clothed

officers without visible firearms questioned him.[66]

---

[60] *Harris v. New York*, 401 U.S. 222, 226, n.4 (1971).

[61] The Supreme Court has held that "interrogation in certain custodial circumstances is inherently coercive and [] that statements made under those circumstances are inadmissible unless the suspect is specifically informed of his Miranda rights."  *New York v. Quarles*, 467 U.S. 649, 654 (1984).  Some of those circumstances include questioning a defendant at the station house, in a police car, in his bedroom at 4:00 a.m., and in his prison cell during his sentence for an unrelated offense, none of which are analogous here.

[62] *Pollard*, 290 F.3d at 1033.

[63] *Id*. at 1034.

[64] *Id*. (citing *Henry v. Kernan*, 197 F.3d 1021 (9th Cir. 1999).

[65] *Mincey v. Arizona*, 437 U.S. 385 (1978).

[66] *Pollard*, 290 F.3d at 1032.

1    King's situation is closer to the latter case than the former.  Soon after the conversation

2  began, officers twice requested permission to record.[67]  And after a cursory discussion about the

3  home's ownership and occupants, they also requested King's permission to continue their

4  questioning.[68]  Although King said he was eager to get some sleep before his graveyard shift, he

5  agreed to both requests.[69]  Officers also asked King if he would prefer to continue talking in the

6  garage for more privacy,[70] and King agreed to that as well.[71]  These agreements evince a

7  voluntary interaction between King and the officers.

8       Nor has King shown that his statements were coerced.  "[C]oercive police activity is a

9  necessary predicate to the finding that a confession is not 'voluntary.'"[72]  Though officers

10 warned King of potential jailtime if he didn't respond truthfully to their questions,[73] there is no

11 indication that King's statements following that remark were involuntary.  He remained coherent

12 and calm, and the conversation continued on as it had before.  King asserts that officers'

13 positioning in a triangle formation around him imposed psychological coercion.[74]  But that detail

14 alone does not demonstrate an environment that impaired King's capacity for self-control or

15 bullied him into a reluctant confession.  Nor did the officers' questions show an intention to

16 overpower King's will.  They did not threaten violence with weapons drawn or attempt to

17 deceive King with leading questions.  So I do not find that King was questioned in a coercive

18

19  [67] ECF No. 70-2 at 15, 16–17.

    [68] *Id*. at 16.

20  [69] *Id*. at 16–17.

21  [70] *Id*. at 16.

    [71] *Id*. 16–17.

22  [72] *Colorado v. Connelly*, 479 U.S. 157, 167 (1986).

23  [73] ECF No. 70-2 at 35.

    [74] ECF No. 93 at 6.

environment that would render his statements involuntary.  I thus overrule King's objections in this regard, adopt the magistrate judge's recommendation, and deny King's motion to suppress his statements—with the caveat that they may not be used as substantive evidence at trial, only impeachment evidence should King testify.

**B.      Omegle and TextNow are not state actors for Fourth Amendment purposes.**

King argues in his motion to suppress that his Fourth Amendment rights were violated when Omegle and TextNow preserved the contents of his internet accounts.  He contends that this preservation was government action, a warrantless seizure, and unreasonable under the Fourth Amendment, and that it should therefore be suppressed.  King theorizes that Omegle and TextNow acted on the government's behalf because the government made a preservation request to them under the Stored Communications Act (SCA), 18 U.S.C. § 2703(f), which requires electronic-communication providers to preserve records or other evidence pending a court order or other process.[75]

The magistrate judge recommends that I deny King's motion because responding to a government request and complying with such statutory obligations under § 2703(f) does not constitute state action.[76]  King objects that the obligations under the SCA are more akin to a government order than a request, which turns Omegle and TextNow's compliance into state action.[77]  He also argues that the preservation was a seizure because the data is his personal property and freezing it removes his control over it.[78]

---

[75] ECF No. 75 at 3–4.

[76] ECF No. 88 at 8–9.

[77] ECF No. 93 at 10–11.

[78] *Id*. at 12, 16.

1
2
    **1.**      *Compliance with federal regulations can turn private action into state action for Fourth Amendment purposes.*

3          The Supreme Court held in *Skinner v. Railway Labor Executives* that compliance with

4 regulatory obligations can transform private action into government conduct for purposes of the

5 Fourth Amendment.[79]  In *Skinner*, the Federal Railroad Administration promulgated regulations

6 that authorized railroad companies to administer breath and urine tests to employees.[80]  The High

7 Court found that such testing was government action because these federal regulations

8 preempted state laws over the same subject, allowed the Federal Railroad Administration to

9 receive biological samples, precluded private railroads from contracting out these tests, and

10 essentially prohibited employees from declining.[81]  These "specific features" combined to

11 establish state action sufficient to implicate the Fourth Amendment.[82]

12
13
    **2.**      *Because King's data was accessible regardless of a government preservation request, suppression is not appropriate.*

14          The Ninth Circuit distinguished electronic-service providers' (ESP) compliance with the

15 SCA from the testing in *Skinner* just last year in *United States v. Rosenow*, however.[83]  Facing

16 sexual-exploitation and child-pornography charges based, in part, on digital data that Yahoo and

17 Facebook had preserved at the government's request, Rosenow moved to suppress that

18 evidence.[84]  He argued that the SCA and another federal statute transformed the ESP companies'

19
20  [79] *Skinner v. Ry. Lab. Executives' Ass'n*, 489 U.S. 602, 614–16 (1989).

  [80] *Id.*

21  [81] *Id.* at 615.

22  [82] *Id.*

23  [83] *United States v. Rosenow*, 50 F.4th 715, 729–31 (9th Cir. 2022), cert. denied, 143 S. Ct. 786 (2023).

  [84] *Id.* at 724.

searches into government action just like the railroad's compliance with the federal regulations in *Skinner* triggered Fourth Amendment protections.[85]  The Ninth Circuit panel was "unconvinc[ed]."[86]  It reasoned that, "unlike the regulations at issue in *Skinner*, which explicitly authorized railroads to administer drug and alcohol tests to their employees based on 'reasonable suspicion,' the Stored Communications Act does not authorize ESPs to do anything more than access information already contained on *their* servers as dictated by their terms of service."[87]  The SCA allows Yahoo and Facebook "to choose not to search their users' data.  Therefore, when they do search, they do so of their own volition."[88]  Nor does the Act prohibit ESPs from contracting away their right to search user data, a characteristic that the regulation in *Skinner* lacked.[89]  The panel concluded that the provisions in the SCA "do not have the 'clear indices of the government's encouragement, endorsement, and participation' sufficient to implicate the Fourth Amendment."[90]

The court in *Rosenow* did not reach the question of whether preserving, as opposed to searching, Rosenow's digital data under § 2703(f) violated the Fourth Amendment, however, because the preservation requests were not a but-for cause of the government's ability to procure the evidence from Yahoo and Facebook.[91]  "A Fourth Amendment violation requires suppression of evidence only if the violation is the 'but-for' cause of the government procurement of

---

[85] *Id*. at 729.

[86] *Id*. at 730.

[87] *Id*. (citing *Skinner*, 489 U.S. at 611) (cleaned up).

[88] *Id*.

[89] *Id*.

[90] *Id*. (quoting *Skinner*, 489 U.S. at 615–16) (cleaned up).

[91] *Id*. at 736.

1    evidence."[92]   In *Rosenow*, the court found that the defendant had "not demonstrated that the

2    data" provided by the ESPs "came from a copy of his data maintained in response to a

3    preservation request."[93]   Nor had he shown that the information produced had become

4    unavailable "such that it only could have come from a preserved copy."[94]   Because the

5    preservation requests thus had "*no* effect" on the government's ability to obtain the digital data,

6    the court did not find a "causal connection to the government's preservation requests that would

7    warrant suppression."[95]

8            Similarly here, King has not shown that the government's preservation requests were the

9    but-for cause of the government's collection of this evidence from Omegle and TextNow.   The

10   data was preserved because of these providers' own internal policies.   Absent a preservation

11   request, Omegle generally retains user data for a minimum of 120 days,[96] and TextNow retains it

12   for two years.[97]   There were 101 days between King's communication with H.S. and the issuance

13   of search warrants for his digital data on these platforms.[98]   So, at the time the search warrants

14   were issued, King's digital data would still have been maintained by Omegle and TextNow even

15   without the government's preservation requests.   This fact severs any causal connection between

16   the preservation requests and the digital data that King moves to suppress.   Because the

17   preservation requests were not the but-for cause of the government's ability to collect King's

18

19   [92] *Id*. (citing *Hudson v. Michigan*, 547 U.S. 586, 592 (2006)).

     [93] *Id*.

20   [94] *Id*.

21   [95] *Id*. (original emphasis).

22   [96] *Omegle Privacy Notice*, Omegle (Oct. 27, 2022), https://www.omegle.com/static/privacy.html; *see also* ECF No. 77-1 at 3.

23   [97] ECF No. 77-2 at 9.

     [98] ECF No. 44 at 2; ECF No. 75-1 at 3; ECF No. 75-2 at 3.

1  data from these ESPs, suppression is not warranted.  So I adopt the magistrate judge's

2  recommendation and deny King's motion to suppress the contents of his internet accounts.

3

**C.   King's motion to suppress evidence from his cell phone is referred back to the
4        magistrate judge to reevaluate in light of a new declaration.**

5          King also moves to suppress all the evidence that was obtained from his cell phone,

6  arguing that the warrant was overbroad and lacked specificity.  The government responds that

7  the warrant was not overbroad but, even if it was, the warrant incorporates an affidavit that cures

8  any deficiency.  It contends that the affidavit was sufficiently incorporated because the warrant

9  contained words that referenced the affidavit, and the affidavit was available to officers during

10  their search of King's cell phone.[99]  It adds that King is not entitled to an evidentiary hearing on

11  this issue and that "the Court should not consider any other evidence, including testimony from

12  the affiant."[100]

13          The magistrate judge determined that the warrant was overbroad and did not incorporate

14  the affidavit.[101]  He reasoned that an affidavit may cure an overbroad warrant if it's sufficiently

15  incorporated, and incorporation requires that (1) the warrant contain words of reference and (2)

16  the affidavit accompany the warrant when the search is conducted.[102]  The magistrate judge

17  found that the government's position fell apart at the second prong because it was unclear from

18  the record whether officers had access to the affidavit during the search.[103]

19

20

---

21  [99] ECF No. 78 at 10–11.

[100] *Id.* at 15.

22  [101] ECF No. 88 at 12.

23  [102] *Id.*

[103] *Id.* at 12–13.

Recognizing that the inadequacy of its original effort puts its case at risk, the government offers both argument and evidentiary support for this incorporated-affidavit theory in its objection to the report and recommendation.  It explains that the affidavit in support of the warrant request was "available for review" by lead detective Kari Skinner and thus was sufficiently incorporated.[104]  And the government now submits the unrebutted declaration of Detective Skinner, who states:

1.  I am a detective with the Henderson Police Department, and I have been with the Henderson Police Department since 2016.

2.  I am the lead detective for Henderson Police Department's investigation of Kenton Hardy King under Incident Number 20-09724.

3.  I conducted the search of King's digital devices.

4.  **When I conducted the search of King's digital devices, I had the entire search warrant application authorizing the search of King's digital devices, dated June 4, 2020, available to me, to include the search warrant, the list of property to be searched, the list of property to be seized, and the affidavit.**  I maintain a copy of those materials in my case file, and they were available to me for reference while I conducted the search.[105]

The government also asserts that it's prepared to provide additional evidence and testimony at an evidentiary hearing, should the court set one.[106]

King responds that the government's delay in providing this evidence has prejudiced his ability to offer sufficient arguments in response.[107]  He also contends that an evidentiary hearing is not appropriate under *United States v. Howell*,[108] explaining that the Ninth Circuit held in

---

[104] ECF No. 94 at 7.

[105] *Id*. at 22.

[106] *Id*. at 7 n.2.

[107] ECF No. 95 at 7.

[108] *Id*. at 8 (citing *United States v. Howell*, 231 F.3d 615, 620 (9th Cir. 2000).

1  *Howell* that it was not an abuse of discretion for a district court judge to deny a motion to

2  suppress without an evidentiary hearing based on the evidence presented to the magistrate judge

3  after the defendant attached new evidence to the objection to the report and recommendation.[109]

4  But *Howell* stands for the proposition that a district court judge *may* refuse to consider additional

5  evidence that was not submitted to the magistrate judge,[110] it does not require it.  The court

6  maintains the discretion to consider additional evidence.[111]  And here, Detective Skinner's

7  declaration materially changes the record.  So I refer this suppression issue back to Magistrate

8  Judge Albregts to reconsider the report and recommendation in light of this new evidence.

9  **D.    A bill of particulars is denied.**

10        Finally, King moves for a bill of particulars, requesting clarification on the substantial-

11  step element required for the attempted-sex-trafficking-of-children charge.[112]  The magistrate

12  judge recommends denying King's motion because the affidavit in support of the search warrant

13  provides facts elucidating King's substantial steps: he took nude photos and videos of H.S. and

14  threatened to send them to family and friends if she did not procure money by sexually

15  trafficking herself.[113]  King does not object to the magistrate judge's recommendation, and I

16  agree with it.[114]  So I adopt the recommendation and deny King a bill of particulars.

17

18

19

---

20  [109] *Id.* (citing *Howell*, 231 F.3d at 620).

21  [110] *Howell*, 231 F.3d at 622.

    [111] *Id.* at 621–622.

22  [112] ECF No. 73 at 3.

23  [113] ECF No. 88 at 5.

    [114] ECF No. 93 at 1 n.2.

**Conclusion**

IT IS THEREFORE ORDERED that Kenton King's objection **[ECF No. 93] is OVERRULED** and the magistrate judge's report and recommendation **[ECF. 88] is ADOPTED in part**.  King's motion to suppress the statements he made to officers **[ECF No. 44]**, motion for a bill of particulars **[ECF No. 73]**, and motion to suppress the contents of his internet accounts **[ECF No. 75] are DENIED**.  The motion to suppress his cell phone evidence **[ECF No. 74]** and the government's objection to that recommendation **[ECF No. 94]** are **referred back to Magistrate Judge Albregts for reconsideration** and for a report and recommendation on this issue only**.**

_____
U.S. District Judge Jennifer A. Dorsey
November 16, 2023